IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JARRETT INDUSTRIES OF THE CAROLINAS, INC. : : : | |
| v. : | Civil No. WMN-05-1397 |
| COBURN, INC. : : : : | |

### MEMORANDUM

The defendant, Coburn, Inc. (Coburn), has moved to dismiss the complaint filed by the plaintiff, Jarrett Industries of the Carolinas, Inc. (Jarrett), for lack of personal jurisdiction or, in the alternative, to transfer venue to the Northen District of Ohio.  Paper Nos. 4, 6.  Defendant first raised the request to transfer venue in its reply memorandum supporting its motion to dismiss.  Paper No. 6.  Plaintiff has filed a motion to strike the portion of Plaintiff's reply memorandum that raises the request to transfer venue.  Paper No. 7.  All motions are ripe for review.  Upon a review of the pleadings and applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6).  Defendant's motion to dismiss or transfer venue will be denied and Plaintiff's motion to strike will be denied as moot.

### I.   FACTUAL AND PROCEDURAL BACKGROUND

Jarrett is a family-owned and operated business that

supplies packaging design and products to clients located throughout the country. It is a closely-held corporation organized under North Carolina law with its principal office in Owings Mills, Maryland. Compl. ¶ 5. Jarrett provided custom packaging to Electrolux USA (Electrolux) for more than five years. Coburn, a closely-held corporation organized under Ohio law with its principal office in Ohio, was a subcontractor used by Jarrett to service its Electrolux contract. Plaintiff alleges that Coburn began dealing directly with Electrolux and entered into an agreement to supply packaging directly to Electrolux, thereby cutting Jarrett out of the deal. On May 19, 2005, Jarrett brought a complaint against Coburn in this Court alleging breach of contract, tortious interference with contractual and business relationships, and conversion.

## II. STANDARD OF LAW

When a defendant challenges a court's personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of proving, by a preponderance of the evidence, that the court can exercise jurisdiction over the defendant. Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003). When a district court does not conduct an evidentiary hearing, as in the present case, the plaintiff is required only to make a prima facie showing of personal jurisdiction. Id. In deciding whether the plaintiff

2

has made the requisite showing, the court must make all reasonable inferences and resolve all factual disputes in the plaintiff's favor. Mylan Lab., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993).

The nature of the defendant's contacts with the forum state determines whether a court may assert specific or general jurisdiction over a defendant. Where the claim is related to or arises out of the defendant's contacts with the forum state specific jurisdiction may be established. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984). The defendant may be subject to general jurisdiction where the suit is unrelated to the defendant's contacts with the forum state but the defendant maintains "continuous and systematic" contact with the state. Id. at 416. In the present case, there are no facts to establish "continuous and systematic general business contacts with" Maryland as is necessary to establish general jurisdiction.

A district court can exercise personal jurisdiction over a non-resident defendant if (1) jurisdiction is authorized under the state's long-arm statute; and (2) the assertion of jurisdiction comports with the due process requirements of the Fourteenth Amendment. Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001). The Maryland Court of Appeals has held that Maryland's

long-arm statute is co-extensive with the limits of personal jurisdiction set by the Fourteenth Amendment's due process clause.  Mohamed v. Michael, 370 A.2d 551, 553 (Md. 1977).  Thus, the statutory and constitutional inquiries merge into one.  Carefirst, 334 F.3d at 396-96.

The Maryland long-arm statute limits specific jurisdiction to cases where the cause of action "aris[es] from any act enumerated" in the statute itself.  Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1).  Thus, a plaintiff must "identify a specific Maryland statutory provision authorizing jurisdiction."  Johansson Corp. v. Bowness Construction Co., 304 F.Supp.2d 701, 704 (D. Md. 2004) (quoting Ottenheimer Publishers, Inc. v. Playmore, Inc., 158 F.Supp.2d 649, 652 (D. Md. 2001)).  Jarrett relies on a provision of Maryland's long-arm statute which confers personal jurisdiction over a corporation that "transacts any business" in the state.  Md. Code Ann., Cts & Jud. Proc. § 6-103(b)(1).

To determine whether specific jurisdiction exists, the court must consider "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claim arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'"  Carefirst, 334 F.3d at 397.

4

**III. DISCUSSION**

Courts have considered various factors in deciding whether a nonresident corporate defendant's contractual dealings with a resident plaintiff are purposeful enough so that the defendant should foresee being haled in the plaintiff's forum. Nueva Eng'g, Inc. v. Accurate Elec., Inc., 628 F.Supp. 953, 955 (D. Md 1986). The factors include where negotiations were conducted and where payment was made, but the "strongest factor . . . is a determination of whether the defendant initiated the business relationship in some way." Id.

Soliciting business through advertisements may be considered "initiation" of a business relationship. Potomac Design, Inc. v. Eurocal Trading, Inc., 839 F.Supp. 364, 371 (D. Md. 1993) ("When [defendant] sent its brochures, price list, and samples, it was soliciting business from a Maryland resident. That factor strongly indicates that the minimum contacts test is satisfied."). "When a defendant takes 'steps preparatory to initiating a new phase of that relationship,' that factor suffices to satisfy minimum contacts." Id. (quoting Nueva, 628 F.Supp. at 956). This Court in Nueva found that the defendant "took steps preparatory to initiating a new phase of [the business] relationship" when its president visited the forum in order to determine whether the plaintiff could meet its plans for

expansion.  Id.  Similarly, in the present case Coburn took the necessary preparatory steps when, in 2001, it telephoned Jarrett in Maryland to offer its services.  Although Jarrett did not take Coburn up on this offer until some time after the initial contact, Coburn, nonetheless, made the initial reach into Maryland.[1]

Even if this Court were to find that Jarrett initiated the new phase of the relationship, there are additional contacts that satisfy the minimum contact test.  In Cancun Adventure Tours,

---

[1] Todd Zimmerman, President of Coburn, states in his affidavit that Coburn introduced itself to Jarrett in 2001, and Jarrett initiated the business relationship by contacting Coburn for a bid in 2003.  Zimmerman Aff. ¶ 8.  Melvyn Leeb, President of Jarrett, however, states in his declaration that Coburn's salesman first telephoned Jarrett's Maryland office, and then personally visited the North Carolina office several months before the contracts at issue were made.  Leeb Suppl. Decl. ¶ 3.

Defendant argues that the facts of the present case are similar to the facts of Johansson, in which this Court concluded that mere phone and mail contacts did not support personal jurisdiction over a foreign party who did not initiate the business relationship.  304 F.Supp.2d at 706.  The defendant in Johansson was a North Carolina corporation that built custom homes in North Carolina.  Id. at 702.  The Johansson court gave significant weight to the fact that in its twenty-five year history, the defendant never solicited business outside the state or did any work outside the state.  Id. 705-06.  The relationship at issue was initiated by the plaintiff's client based on the plaintiff's solicitation of business in North Carolina and the defendant never reached beyond North Carolina.  Id.  In the present case, Coburn's initial solicitation was in the forum state.  The Johansson court also focused on the fact that the defendant was reluctantly drawn into a one-time, short-term relationship.  Id. at 708.  Here, there is no sign that Coburn unwillingly entered the relationship, and the relationship was not one-time, but ongoing with multiple sales made from Coburn to Jarrett.

6

Inc. v. Underwater Designer Co., the Fourth Circuit found that an advertisement in a national magazine was not enough to confer jurisdiction, but the defendants' subsequent actions of negotiating and undertaking a contractual obligation with a resident of the forum state combined were enough to satisfy the minimum contacts requirement.  862 F.2d 1044, 1046 (4th Cir. 1988).  Just as in Cancun Adventure, where the defendant mailed purchase orders to the plaintiff in the forum state and accepted payment from the forum state, Coburn mailed its invoices to Jarrett's Maryland office, Jarrett paid the invoices from Maryland, and Jarrett issued purchase orders from its office in Maryland to Coburn in Ohio.  Leeb Decl. ¶ 14.  In Cancun Adventure, the only other contacts were phone and mail correspondence after the sale was made, which is similar to the present case where there were further telephone contacts between Ohio and Maryland in reference to the ongoing contract performance.[2]  Leeb Decl. ¶¶ 11, 18; Leeb Suppl. Decl. ¶ 5.

This Court concludes that the exercise of personal jurisdiction over Defendant comports with fair play and substantial justice as illustrated by an analysis of the following factors: "the burden on the defendant; the interests of the forum State; the plaintiff's interest in obtaining relief;

---

[2] In addition, contract negotiations occurred over the telephone between Ohio and Maryland.  Leeb Decl. ¶¶ 11, 18.

7

the interstate judicial system's interest in obtaining the most efficient resolution of controversy; and the shared interest of the several states in furthering fundamental substantive social policies." Camelback Ski Corp. v. Behning, 312 Md. 330, 342 (Md. 1988) (citing Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102, 113-115 (1987)).

As to the first factor, Coburn argues that litigation in Maryland will present a "tremendous" hardship on Coburn. Zimmerman Aff. ¶ 10. The reason provided is that Coburn is a small, locally-run business in Ohio with about 50 to 60 employees and a "lean management team." Id. Coburn argues that because all of the management team would be forced to travel to Maryland, the burden on Coburn would be great. Id. First, Ohio is not far from Maryland and "in this modern world it is not unfair to require defendants to travel some distance to defend lawsuits." Potomac Design, 839 F.Supp. at 371. Second, Jarrett is a smaller company than Coburn and has only two management personnel, Melvyn and Leslie Lebb, who are married and live in Maryland. Lebb Decl. ¶ 5. Therefore, the burden on Jarrett would be equal if not greater than the burden on Coburn.

The interests of the forum state also favor litigation in Maryland. Coburn argues that if as Jarrett alleges, the terms of the purchase order are binding, then North Carolina law will be applied and Maryland's interests in the dispute are minimal.

8

Jarrett, however, is qualified and registered to do business in Maryland and, as such, Maryland has an interest in protecting the interests of foreign corporations operating within the state.

Furthermore, the three possible fora for the litigation seem to be Ohio, Maryland, and North Carolina. Even if North Carolina law should apply, because both parties would have to travel to North Carolina in order to litigate the dispute, North Carolina does not seem to be a favorable option. Ohio and Maryland are equally capable of applying North Carolina law, and the interstate judicial system's interest in obtaining the most efficient resolution of controversies militates against requiring plaintiff to file its suit all over again in North Carolina, or having this Court transfer venue, especially when defendant's alleged hardship is likely to be less than the burden placed on plaintiff to litigate outside its forum.

Because Defendant's "conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court" in Maryland, this Court concludes that due process considerations are satisfied. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

For many of these same reasons, Coburn's request to transfer the litigation to Ohio will also be denied. In determining whether to grant a motion to transfer, courts consider four factors: "(1) the weight accorded the plaintiff's choice of

9

venue, (2) witness convenience and access, (3) convenience of the parties, and (4) the interest of justice." Lynch v. Vanderhoef Builders, 237 F.Supp.2d 615, 617 (D. Md. 2002). In addition, the decision whether to transfer is left to the sound discretion of the district court. Dicken v. United States, 862 F.Supp. 91, 92 (D. Md. 1994).

A plaintiff's choice of forum is ordinarily accorded considerable weight. That weight is significantly lessened when none of the conduct complained of occurred in the forum selected by the plaintiff. Dicken, 862 F.Supp. at 92-93. In the present action, Jarrett alleges that Coburn began working directly with Electrolux, a previous client of Coburn, therefore, cutting Jarrett out of the deal. While Coburn claims that these actions all allegedly occurred in Ohio, Jarrett argues that, because all contracts were managed out of Maryland, the activities related to their claim occurred in Maryland. Leeb. Suppl. Decl. ¶ 5. Plaintiff's choice of Maryland as a forum will not receive considerable weight, but it is entitled to some deference.

Second, Coburn argues that the factors of witness and party convenience support transferring the litigation to Ohio. Coburn asserts that "the witnesses and evidence are all outside of Maryland." Zimmerman Aff. ¶ 11. Coburn also argues that all of its witnesses will have to travel to Maryland. Zimmerman Aff. ¶ 10. Jarrett, however, asserts that witnesses and documents

relevant to the litigation are located in Maryland, as well as in Georgia, North Carolina, and Ohio. Leeb Suppl. Decl. ¶ 6. Jarrett also states that because Jarrett has only two management personnel - Melvyn and Leslie Lebb - who both reside in Maryland, the operations of Jarrett will be greatly effected if the two managers have to travel for litigation. Lebb Decl. ¶ 5. Because documents and witness are located in various states, including Maryland, Coburn has failed to show that Ohio would be a more convenient forum.

Finally, the "interest of justice" category includes, inter alia, "the court's familiarity with applicable law." Board of Trustees, Sheet Metal Workers National Fund v. Baylor Heating & Air Conditioning, Inc., 702 F.Supp. 1253, 1260 (E.D. Va. 1988). If, as previously discussed, North Carolina law applies, Maryland and Ohio are equally capable of applying such law and therefore, this consideration is neutral.

Because none of the factors favor transferring the litigation to Ohio, the Court will deny Coburn's request to transfer.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer venue to the Northen District of Ohio will be denied. A

11

separate order consistent with the reasoning of this Memorandum will follow.

                                                _____/s/_____

                                                William M. Nickerson
                                                Senior United States District Judge

Dated: December 1, 2005